UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RALPH A. EMMANUELLI,
and HILLSBOROUGH
HISPANIC COALITION, INC.,

    Plaintiffs,

v.              Case No. 8:12-cv-199-T-24-AEP

REINCE PRIEBUS, in his official
capacity as Chair of the Republican
National Committee,

    Defendant.

_____/

## ORDER

   This cause comes before the Court on Defendant Reince Priebus' Motion to Dismiss (Doc. No. 4). Plaintiffs Ralph A. Emmanuelli and Hillsborough Hispanic Coalition, Inc. ("Coalition") have filed a response in opposition (Doc. No. 8). The Court directed the parties to supply supplemental briefing addressing the issue of "whether, and in what circumstances, political parties are considered covered entities *for purposes of Section 2 of the Act*," (Doc. No. 9), and the parties filed memoranda in response to that order (Doc. Nos. 10, 11). For the reasons stated herein, the motion to dismiss is GRANTED.

## I.  Background

   Plaintiffs have alleged the following: Emmanuelli is a citizen and registered Republican voter in Pinellas County, Florida. The Coalition is a non-profit corporation with the stated purpose of promoting, protecting, and defending the rights of the Hispanic community under the constitution and laws of the United States of America. Priebus is the Chair of the Republican

National Committee ("RNC").

The RNC's rules mandate that "no primary, caucus, or convention to elect . . . delegates to the national convention shall accrue prior to the first Tuesday in March in the year in which a national convention is held, except Iowa, New Hampshire, South Carolina and Nevada may begin their processes at any time on or after February 1 [of a national convention year] . . . ." (Doc. No. 1 at 1). The RNC's rules also mandate that if a state violates the rules relating to the timing of the delegate-selection process, the number of that state's convention delegates will be reduced by fifty percent.

Florida's legislature set the state's presidential primary for January 31, 2012, and the State Republican Party opted to accept the results of the primary to determine its delegate selection for the national convention. In reaction, New Hampshire, Iowa, and South Carolina scheduled their primaries and caucuses in January, before the Florida primary. The RNC reduced the delegates from all of these states.

Plaintiffs allege that, by allowing Iowa, New Hampshire, South Carolina and Nevada to hold their primaries first, the RNC has given those states "significant influence" on the selection of a presidential nominee, power to eliminate candidates who are not top vote-getters, and ability to skew the debate to reflect their own dominant demographics. Because the percentage of registered Republican Hispanic voters in the early voting states is small compared to the percentage of registered Republican Hispanic voters nationwide, Plaintiffs contend "presidential candidates often stake out positions that are contrary to the positions supported by Hispanic American voters." (Doc. No. 1 at 3).

Plaintiffs seek "a judicial declaration concerning whether the 50 percent delegate

reduction penalty imposed by the RNC against the State of Florida for holding its Presidential

Primary Election on January 31, 2012, violates the due process[1] and equal protection clauses of

the United States Constitution, as well as 42 U.S.C. § 1983 and Section Two of the Voting

Rights Act, 42 U.S.C. § 1973."  (Doc. No. 1 at 4).

The crux of Plaintiffs' argument is that, by reducing Florida's number of delegates to the

Republican National Convention by fifty percent, Priebus has "underenfranchised" Hispanic

Republican voters.  Priebus moves for dismissal on four grounds: (1) the complaint fails properly

to assert subject matter jurisdiction because Plaintiffs lack standing; (2) Plaintiffs' claims are

nonjusticiable; (3) the complaint fails to allege a claim under the Fourteenth Amendment; and

(4) the complaint fails to state a claim under Section Two of the Voting Rights Act ("Act").

However, because the Court has determined that there is no state action implicated in this case,

which is a required element for both of Plaintiffs' claims, the Court will address only that issue.[2]

## II.      Standard of Review

In deciding a motion to dismiss, the district court must view the complaint in the light

most favorable to the plaintiff.  *Murphy v. Fed. Deposit Ins. Corp.*, 208 F.3d 959, 962 (11th Cir.

2000).  Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a short and plain

statement of the claim showing the pleader is entitled to relief so that the defendant receives fair

---

[1] Although Plaintiffs refer to the due process clause under the "Preliminary Allegations" of their complaint, neither Count I nor Count II allege a violation of the due process clause.

[2] The Court notes, however, that the justiciability of Plaintiffs' claims and the applicability of the Act are far from clear.  *See, e.g.*, *Wymbs v. Republican State Exec. Comm. of Fla.*, 719 F.2d 1072, 1076–77 (11th Cir. 1983) (addressing justiciability); *Nelson v. Dean*, 528 F. Supp. 2d 1271, 1282 (N.D. Fla. 2007) (citing *LaRouche v. Fowler*, 77 F. Supp. 2d 80 (D.D.C. 1999) (addressing the Act)).

3

notice of what the claim is and the grounds upon which it rests.  *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007).

Rule 8 does not require a claimant to set out in detail the facts upon which he bases his

claim, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  To survive a motion to dismiss, a

complaint must allege sufficient facts, accepted as true, to state a plausible claim for relief.  *Id.*

If a complaint's well-pleaded facts "do not permit the court to infer more than the mere

possibility of misconduct," the complaint stops short of plausibility and does not show the

plaintiff is entitled to relief.  *Id.* at 1950.  Furthermore, while the Court must assume that all of a

complaint's factual allegations are true, this assumption is inapplicable to legal conclusions.  *Id.*

at 1949.  A plaintiff may not open the door to discovery "armed with nothing more than [legal]

conclusions."  *Id.* at 1950.

However, regardless of the factual allegations, a court "may dismiss a complaint on a

dispositive issue of law."  *Acosta v. Campbell*, 309 F. App'x 315, 318 (11th Cir. 2009) (per

curiam).  Dismissal is proper when "no construction of the factual allegations will support the

cause of action."  *Marshall Co. Bd. of Educ. v. Marshall Co. Gas Dist.*, 992 F.2d 1171, 1174

(11th Cir. 1993).

## III.    Whether there was State Action in this Case?

Count I is a claim under 42 U.S.C. § 1983 based on Priebus' alleged violation of the

equal protection clauses of the Constitution; therefore, Plaintiffs must demonstrate that Priebus

was a state actor.  42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance,

regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or

causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."); *Peterson v. Ramirez*, 428 F. App'x 908, 909 (11th Cir. 2011) ("Section 1983 claims can only be asserted against state actors.").

Count II claims a violation of Section 2 of the Act, which similarly governs conduct of only states or political subdivisions thereof.  42 U.S.C. § 1973(a) ("No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color . . . .").  The Act provides: "[t]he term 'political subdivision' shall mean any county or parish, except that where registration for voting is not conducted under the supervision of a county or parish, the term shall include any other subdivision of a State which conducts registration for voting."  *Id.* at § 1973l(c)(2).

Priebus contends that, in order to state a claim of deprivation of their equal protection rights via § 1983, Plaintiffs must establish that the alleged deprivation was committed under the color of state law.  He argues that the RNC is a private, unincorporated entity, and that Plaintiffs' allegations are legally insufficient to establish that the RNC's delegate selection rules are state action.  In support, Priebus notes that Florida has not endorsed, adopted, or enforced the RNC's delegate selection rules; and that the outcome of Florida's primary does not determine who will appear on the ballot for the general election, but instead, the Republican nominee will be selected at the Republican National Convention.

Plaintiffs cite *Nelson v. Dean* as suggesting that under certain circumstances, a political

party's actions may constitute state action, and that there is a reasonable probability that state action would be found where there is evidence of racial discrimination in the primary process. 528 F. Supp. 2d 1271, 1276–77 (N.D. Fla. 2007).  However, Plaintiffs concede that *Nelson* was not decided on the issue of state action, that *Nelson* made no ruling with respect to that issue, and that neither the Supreme Court nor any federal court of appeals has addressed state action under the circumstances presented in this case.

The Eleventh Circuit has employed three tests to determine whether the action of a private entity may be attributed to the state: "(1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test."  *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003).

> The public function test limits state action to instances where private actors are performing functions traditionally the exclusive prerogative of the state. The state compulsion test limits state action to instances where the government has coerced or at least significantly encouraged the action alleged to violate the Constitution. The nexus/joint action test applies where the state has so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the enterprise.

*Id.* (internal quotation marks and alterations omitted).  To charge a private party with state action under the nexus/joint action standard, "the governmental body and private party must be intertwined in a symbiotic relationship [, and] . . . the symbiotic relationship must involve the specific conduct of which the plaintiff complains." *Id.* at 1278 (internal quotation marks omitted).

Plaintiffs do not contend that the state somehow coerced or compelled Priebus to reduce Florida's number of convention delegates; rather, their argument focuses on "the public functions and joint action" that are entailed in Florida's Republican primary process.  (Doc. No.

1 at 6).  For example, Plaintiffs contend that Florida and the RNC operate jointly.  Specifically,

Plaintiffs have alleged that because Florida "violate[d] the rules of the Republican party relating

to the timing of" its primary, and because the State Republican Party "has opted to accept the

results of this election to determine its delegate selection to the Republican National

Convention," the RNC has decided to reduce Florida's delegate count by half.  (Doc. No. 1 at 2).

Essentially, Plaintiffs have alleged that because Florida disobeyed the RNC, the RNC is

penalizing Florida by reducing its number of convention delegates.  Priebus argues that it is

inconsistent to claim that the RNC's punitive actions toward Florida can be attributed to the

State of Florida.  Priebus' point is well taken.  The precipitating event in this case was the

Florida legislature's decision to set Florida's presidential primary on January 31, 2012 — well

before the time mandated by the RNC.  As a result, the RNC decided to cut Florida's convention

delegates by fifty percent.  It is unclear to this Court how Plaintiffs can contend that Florida and

the RNC operated jointly in this instance when Florida and the RNC are clearly at odds.  *See*

*Nelson*, 528 F. Supp. 2d at 1276 ("[T]he state had nothing to do with the adoption of the

[Democratic National Committee's ("DNC")] delegate selection rules or the decision not to seat

delegates chosen in violation of those rules.  Indeed, the DNC has vigorously resisted the state's

rescheduling of the primary and the state party's announced intention to use the primary results

as a basis for selecting delegates.  In that sense the DNC's decisions have been the very

antithesis of state action.").  Accordingly, the Court rejects Plaintiffs' argument that Florida and

the RNC have operated jointly.

     Additionally, Plaintiffs assert that the RNC is a political organization that performs

significant public functions, as well as functions that are sufficiently intertwined with

government operations as to constitute joint action with state authorities.  (Doc. No. 1 at 5).

Specifically, Plaintiffs note that: (1) Florida law establishes statutory regulations and

requirements for the two major political parties; (2) the State of Florida guarantees a position on

the general election ballot for the RNC's nominee; (3) the RNC and a variety of government

functionaries coordinate in the candidate selection process and the primary and general elections

— including the determination of which names are included on the primary ballot; and (4)

Florida law directs that the delegates for specific candidates be allocated by party rule to assure

that those votes count in the nominating process.  (Doc. No. 1 at 5–8).

However, the Court concludes that these allegations are insufficient to establish that — in

enforcing its internal rules and decreasing Florida's convention delegates by fifty percent — the

RNC either "performed [a] function[] traditionally the exclusive prerogative of the state," or

engaged in a joint enterprise with the state.  Consequently, Plaintiffs' complaint does not

establish that there was any state action present in this case to state a claim under § 1983.

Similarly, Plaintiffs have failed to state a claim under Section 2 of the Act.  Although the

Supreme Court has determined that, in certain limited circumstances, a political party may be a

covered entity under Section 5 of the Act,[3] Plaintiffs have not cited, and the Court has not found,

any authority supporting the proposition that under these facts, a political party can be

considered a "State or political subdivision" thereof for purposes of Section 2 of the Act.  With

no such supporting authority, the Court is disinclined to expand the purview of Section 2.  This

is especially true in a case like the one presented here, where the state and the RNC are so

_____

[3]  *Morse v. Republican Party of Va.*, 517 U.S. 186, 225 (1996).

8

obviously at loggerheads.

**IV.     Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that Priebus' Motion to Dismiss (Doc.

No. 4) is GRANTED.  Because no construction of these factual allegations will establish a cause

of action under § 1983 or Section 2 of the Act, amendment would be futile, and Plaintiffs'

complaint is dismissed with prejudice.  The Clerk is directed to enter judgment in favor of

Priebus and to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 13th day of April, 2012.


SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record